**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

BENDTRAND GLOBAL SERVICES S.A.,    )
RUNNER LLC and ALEXANDER KAPLIN    )
   )
     Plaintiffs,    )
   )
     v.    )    Case No: 21-CV-4684
   )
DANIEL SILVERS,    )
   )
     Defendant.    )
   )

**DEFENDANT DANIEL SILVERS MOTION TO DISQUALIFY**

Defendant Daniel Silvers ("Silvers"), by and through his undersigned counsel, respectfully moves the Court for an order disqualifying Svetlana Kaplina from representing Plaintiffs in this matter and in support states as follows:

**INTRODUCTION**

Kaplina represented Silvers and Hash Token United, LLC ("HTU") at the same time as all the acts and omissions alleged in the Complaint were occurring and provided legal advice on a host of matters related to project and the acts and omissions that form the basis of the claims in the Complaint. The Complaint specifically references Silvers working with Ms. Kaplina and the gravamen of the allegations is his alleged failure to follow her advice. (Cmplt. ¶¶ 52, 79, 80, 82, 83)

There is no legitimate question that Kaplina's prior representation of Silvers and HTU is substantially related to the claims made here. This conflict is terminal and must be resolved before the parties litigate this matter.

## FACTUAL BACKGROUND

While there is no engagement agreement, Ms. Kaplina stated in an email dated December 20, 2020, "My name is Svetlana Kaplina, and I am an Illinois attorney. I have been representing Daniel Silvers Corp., d/b/a HTU ("HTU"), in various business matters." (Affidavit of Daniel Silvers attached hereto as Exhibit "A" and incorporated herein) Kaplina is Plaintiff, Alexander Kaplin's sister. (Ex. A at ¶ 2). She represented both Plaintiff and Defendant in the business venture at issue in this case. (Ex. A at ¶ 5). She provided services on a variety of matters for the new business including regulatory compliance which is an issue in the present litigation. (Ex. A at ¶ 6).

Specifically, Kaplina advised Silvers and his single member liability company on various matters related to their work with Plaintiffs including but not limited to: advising on whether to execute vendor and service agreements solely under HTU and Daniel Silvers on the project detailed in the Complaint, the legal compliance of the work done in the project alleged in the Complaint, advising on whether HTU could engage in American operations to complete the project alleged in the Complaint, and securing office space where the work was done. (Ex. A at ¶ 7).

The work done on the project at issue was done at the WeWork office in Chicago. (Ex. A at ¶ 8). During her representation of Silvers and HTU, Kaplina necessarily received confidential information from Silvers material to the instant litigation. (Ex. A at ¶ 9).

The Complaint specifically discusses Kaplina's involvement in the unformed business jointly owned and operated by Plaitiffs and Defendant. Paragraph 52 of the Complaint states, "Initially, Kaplin retained legal counsel to draft and review contracts with the independent contractors and vendors." (Cmplt. ¶ 52). The only counsel retained by Plaintiff and Defendant on the matters at issue in this case was Kaplina. (Ex. A at ¶ 10). Kaplina worked for Silvers and Kaplin on the joint venture at issue in the Complaint. (Ex. A at ¶ 11).

Paragraph 82 of the Complaint states, "[Silvers] told Kaplin that the attorney's involvement was unnecessary and a waste of his time." (Cmplt. ¶ 82). Again, the only attorney working for the parties was Kaplina. (Ex. A at ¶ 10).   Silvers following Kaplina's direction on important compliance issues is a key fact in this case. Silvers in fact followed Kaplina's advice closely and trusted her legal advice given to him at all times relevant. (Ex. A at ¶¶ 12, 13).

Paragraph 83 of the Complaint alleges, "In communication with legal counsel, Silvers was evasive and reluctant to provide basic information about the code." (Cmplt. ¶ 83). The only legal counsel Silvers communicated with was Kaplina who was representing the parties in the yet to be formed business. (Ex. A at ¶ 10).

Paragraph 79 of the Complaint alleges, "On or about March 1, 2021, Kaplin engaged legal counsel to form Newco in the U.S. and to conduct a legal review ensuring that the first version of the DEX would be in compliance with all applicable U.S. laws. (Cmplt. ¶ 79).  This is referring to Kaplina who represented the parties in their venture. (Ex A. ¶ 14). Again, the Complaint puts this legal advice rendered by Plaintiffs' current counsel and Defendant's former counsel directly at issue by alleging in the next paragraph, "Silvers once again resisted legal counsel's involvement." (Cmplt. ¶ 80).

## ARGUMENT

### I.    LEGAL STANDARD

"A motion to disqualify counsel requires a two-step analysis where the Court (1) considers whether there is an ethical violation and then, if so, (2) determines whether disqualification is appropriate to remedy the violation." *Vill. of Tinley Park, Ill. v. Connolly*, No. 17 C 3271, 2018 WL 1054168, at *2 (N.D. Ill. Feb. 15, 2018). When evaluating whether an ethical violation has occurred, courts in the Northern District of Illinois apply the Model Rules of Professional Conduct adopted by the American Bar Association (the "Rules").

## II.     THE REPRESENTATION VIOLATES RULE 1.9

To create an attorney-client relationship, it is not necessary that the parties execute a formal contract, *Westinghouse Electric Corp. v. Kerr-McGee Corp.,* 580 F.2d 1311 (7th Cir. 1978), or that, the relationship be dependent upon the payment of fees. *Id*. at 1317 & n.6. A fiduciary relationship may arise solely from the nature of the work performed and the circumstances under which confidential information is divulged. *Kerr-McGee* at 1320. In this case, Plaintiff and Defendant worked together in a to-be-formed limited liability company with one supplying the capital and the other supplying the labor. Throughout the operation of the new venture both parties had an attorney-client relationship with Kaplina who was advising on their work in the venture and communicating with both independently.

Kaplina's representation of Kaplin and Silvers goes to the basics of the rules governing lawyers. "At the core of Rule 1.9 is the lawyer's continuing duty of loyalty to former clients." Center for Professional Responsibility, American Bar Association, Annotated Model Rules of Professional Conduct 171 (5th ed. ABA 2003). A concern underlying the rule is the possibility of the lawyer revealing or misusing confidential information learned in the prior relationship. Accordingly, the rule recognizes that representing a client against a former client can result in a threat 1) to either client's confidential information; 2) to the interests of the present client because of the lawyer's continuing duties to the former client; or 3) to the interests of both clients because of confusion of the lawyer's role. Restatement (Third) Law Governing Lawyers §132 cmt. a (2001). In this case, all three concerns are implicated where Kaplina obtained confidential information directly relevant to this action in the course of her representation of Silvers in his work on the joint venture at issue in this case.

Rule 1.9 of the Rules of Professional Conduct deals with conflicts of interest with regard to a former client. (a) A lawyer who has formerly represented a client in a matter shall not thereafter: (1) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client, unless the former client consents after disclosure; or (2) use information relating to the representation to the disadvantage of the former client. Most "federal courts use the ethical rules of the states in which they sit." *Huusko v. Jenkins*, 556 F.3d 633, 636 (7th Cir. 2009).

A lawyer may be disqualified where he or she represents a party in a matter in which the adverse party is that lawyer's former client, if the subject matter of the two representations is "substantially related." *Analytica, Inc. v. NPD Research, Inc.*, 708 F.2d 1263 (7th Cir. 1983). In this case the relationship between the representation and this action is made plain in the Complaint that alleges Silvers failure to follow Kaplina's advise as the basis for the claims.

Whether the representation is substantially related concerns whether the attorney *could have* gained confidential information from the first representation that would be relevant in the second. *Analytica v. NPD Research*, 708 F.2d 1263, 1266 (7th Cir. 1983). "It is irrelevant whether [s]he actually obtained such information and used it against his former client [.]" *Id*. This substantial relationship test has three elements: initially, the trial judge must make a factual reconstruction of the scope of the prior legal representation. Second, it must be determined whether it is reasonable to infer that the confidential information allegedly given would have been given to a lawyer representing a client in those matters. Finally, it must be determined whether that information is relevant to the issue raised in the current litigation. *Novo Terpeutisk Lab. A/S v. Baxter Travenol Labs.*, 607 F.2d 186, 195 (7th Cir. 1979) (en banc). If a substantial relationship is found, it is unnecessary for Silvers to prove that Kaplina actually received confidential information and used

it against him. *LaSalle National Bank v. County of Lake,* 703 F.2d. 252, 255 (7th Cir. 1983). Moreover, an attorney or party need not divulge any confidences to prove that they were revealed. *Novo Terapeutisk Laboratorium A/S v. Baxter Travenol Laboratories, Inc*., 607 F.2d 186, 195 (7th Cir. 1979) (en banc). In this case the relationship is obvious as should be the result of disqualifying Kaplina.

The relatedness is readily apparent here where Kaplina worked on the project at issue on the complaint and materially advised Silvers in all phases in the work on the project including important matters of regulatory compliance. *See Van Jackson v. Check N' Go of Illinois*, 114 F. Supp.2d 731 (N.D. Illinois 2000) (holding that where an attorney becomes "familiar with confidential information and strategies employed by [a former client] regarding such [particularized type of claims], including the prosecution of unconscionability claims," the attorney must be disqualified.); *see also LaSalle National Bank v. Grayslake*, 703 F.2d 252, 257 (7th Cir. 1996) (disqualifying attorney even though he did not work on particular agreement in question because he worked on similar sewage agreements and had knowledge of the former client's attitude and policy toward extension of sewer services in general). It is not believable or possible for Kaplina to ignore this confidential and privileged information in prosecuting this case. *Cf. PepsiCo, Inc. v. Redmond*, 54 F.3d 1262, 1269 (7th Cir. 1995) (finding, in a trade secret context, that "unless [the defendant] possessed an uncanny ability to compartmentalize information, he would necessarily be making decisions" in his new job based on trade secrets learned in his previous job). Therefore, Kaplina's representation in this case violates Rule 1.9(c). Because Kaplina's representation violates Rule 1.9(c), she should be disqualified.

## III.    THE REPRESENTATION VIOLATES RULE 3.7

As discussed above the allegations of the Complaint make clear that Kaplina is a key witness referenced throughout the Complaint. "The roles of attorney and witness usually are

incompatible." *Gusman v. Unisys Corp.*, 986 F.2d 1146, 1148 (7th Cir. 1993). As the Seventh Circuit explained, "[a] witness is supposed to present the facts without a slant, while an attorney's job is to advocate a partisan view of the significance of the facts. One person trying to do both things is apt to be a poor witness, a poor advocate, or both." *Id.*, citing, e.g., ABA Model Rule 3.7(a). Thus, under what is known as "the advocate-witness rule," an attorney is barred from acting as both an advocate and a witness in the same proceeding except under limited circumstances not applicable here. *United States v. Jones*, 600 F.3d 847, 861-62 (7th Cir. 2010). Specifically, ABA Model Rule 3.7(a) prohibits an attorney who is a "necessary witness" from acting as a trial advocate on a contested issue.

Plaintiff acknowledges this argument is premature but it is fair to raise it now before Plaintiffs are prejudiced to have to change counsel at a later date. *Cf. alfaCTP Sys., Inc. v. Nierman*, 2016 U.S. Dist. LEXIS 20496, *17, 2016 WL 687281 (noting concerns of jury confusion and appearance of impropriety raised by Rule 3.7 "do not come into play unless and until the attorney-witness is also trial counsel").

## IV.    DISQUALIFICATION IS THE ONLY REMEDY

Disqualification is the only way to, "ensure not only the reality but the appearance of propriety, maintenance of the public trust, and safeguard the privacy of the attorney-client relationship." *Medgyesy v. Medgyesy*, 988 F. Supp. 2d 843, 849–50 (N.D. Ill. 2013). Kaplina pled herself right into the Complaint there's simply no way for her to continue as counsel. She was intimately involved in all phases of venture and the basis for the claims pled. She's the key witness who obtained the relevant facts based on her role as counsel for both Plaintiff and Defendant. Even if there was some way for Kaplina to compartmentalize her knowledge and prevent disclosing confidential and privileged information to Plaintiff (there is not), doing so would violate Kaplina's obligations under Rules 1.9(c) and 1.7 (b). *See also Doe v. Nielsen*, 883 F.3d 716, 719 (7th Cir. 2018) ("[A] conflict of interest arises

when an attorney has an incentive to reject lines of inquiry or argument that might help his client's case."). Therefore, Kaplina should be disqualified.

## CONCLUSION

Based on the foregoing, the Defendant respectfully asks this Court to disqualify Ms. Kaplina from representing Plaintiffs in this matter, require Ms. Kaplina provide an affidavit regarding any information already disclosed to Plaintiffs, and provide any other relief this Court deems just and proper.

Dated January 14, 2022

Respectfully submitted,

**DANIEL SILVERS,**
Defendant

By:      /s/*Alexander N. Loftus*
       One of His Attorneys

Alexander Loftus, Esq.
David Eisenberg, Esq.
LOFTUS & EISENBERG, LTD.
161 N. Clark St., Suite 1600
Chicago, Illinois 60601
T: 312.899.6625
C: 312.772.5396
alex@loftusandeisenberg.com
david@loftusandeisenberg.com

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| BENDTRAND GLOBAL SERVICES S.A., ) <br> RUNNER LLC and ALEXANDER KAPLIN ) <br> ) <br>    Plaintiffs, ) <br> ) <br>    v. ) <br> ) <br> DANIEL SILVERS, ) <br> ) <br>    Defendant. ) <br>                  ) | Case No: 21-CV-4684 |

## <u>AFFIDAVIT OF DANIEL SILVERS</u>

I, Daniel Silvers, hereby declare pursuant to 28 U.S.C. § 1746:

1.      I am over 18 years of age and competent to testify to the matters set forth below, of which I have personal knowledge.

2.      Ms. Kaplina stated in an email dated December 10, 2020, "My name is Svetlana Kaplina, and I am an Illinois attorney. I have been representing Daniel Silvers Corp., d/b/a HTU ("HTU"), in various business matters." (Ex. 1)

3.      Attached hereto as group Exhibit 1 are true and correct copies of emails to and from Svetlana Kaplina sent to and from her in the course of her representation of me.

4.      Kaplina is Plaintiff, Alexander Kaplin's sister.

5.      Kaplina represented both me and Kaplin in the business venture at issue in this case.

6.      Kaplina provided services on a variety of matters for the new business including regulatory compliance which is an issue in the present litigation.

7.      Kaplina advised me and my single member liability company on various matters related to my work with Kaplin including but not limited to: advising on whether to execute vendor

and service agreements solely under HTU and me on the project detailed in the Complaint, the legal compliance of the work done in the project alleged in the Complaint, advising on whether HTU could engage in American operations to complete the project alleged in the Complaint, and securing office space where the work was done.

8.     The work done on the project at issue was done at the WeWork office in Chicago.

9.     During Kaplina's representation of me and HTU, Kaplina necessarily received confidential information from me material to the instant litigation in our countless phone calls about the project.

10.     The only counsel retained by me and Kaplin was Kaplina.

11.     Kaplina worked for me and Kaplin on the joint venture at issue in the Complaint all of the allegations in the complaint referencing counsel are referring to her.

12.     I followed Kaplina's direction on important compliance issues is a key fact in this case.

13.     I followed Kaplina's advice closely and trusted her legal advice given to me at all times relevant.

14.     The only legal counsel I communicated with was Kaplina who was representing the parties in the yet to be formed business.

15.     The legal counsel engaged by Kaplin and I to form the Newco was Kaplina.


Dated: January 14, 2022                    _____/s/Daniel Silvers_____
                                                              Daniel Silvers

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| BENDTRAND GLOBAL SERVICES S.A., RUNNER LLC and ALEXANDER KAPLIN | ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No: 21-CV-4684 |
| | ) | |
| DANIEL SILVERS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

# GROUP EXHIBIT 1



**Daniel Silvers <ds@htu.io>**

## Non-Disclosure Agreements (NDA) George Chikovani and Employment Contract

**Svetlana Kaplina** <skaplina@elanlawgroup.com>                    Thu, May 16, 2019 at 11:09 AM
To: Daniel Silvers <ds@htu.io>, Alex Kaplin <ak@htu.io>

Of course - any time.  Basically,  since he will not be working in Panama, this agreement is altogether inapplicable.  What I suggest you form with him is an independent contractor (v. employer/employee) relationship.  I told Sasha I can draft a contract but it would be helpful to know what you expect him to do and when.  We can discuss over the phone tomorrow.

[Quoted text hidden]



Daniel Silvers <ds@htu.io>

---

## a call this morning
3 messages

---

**Svetlana Kaplina** <skaplina@elanlawgroup.com>                     Mon, Mar 15, 2021 at 9:40 AM
To: Alex Kaplin <ak@htu.io>, Daniel Silvers <ds@htu.io>, lefranc.fabrice@hotmail.fr

Good morning, everyone,

I just spoke to Fabrice Lefranc, and he agreed to help me with the project, which made me very happy.  Fabrice got his legal education in France, but we've worked together on many U.S. legal projects, so he is familiar with the U.S. legal system, and he is great at research  His participation will allow us to speed up the process and bring everything into compliance with the U.S. laws sooner rather than later.  His familiarity with the European law will also be helpful in the future, if and when it becomes relevant.

I would like to have a call this morning with all of us, to first introduce Fabrice, allow him to ask logistical questions, and then begin to go over the technology.  Daniel, please keep in mind that the goal at this point is not to for us to understand the technology in great detail, but only what is (or may be) legally relevant.

What time can we all get on the phone/zoom?  I know that Fabrice is available now, and I'm hoping we can do it between now and the next two hours?


--

Svetlana Kaplina
Attorney
Elan Law Group
73 W. Monroe
Chicago IL 60603
Phone: (312) 772-5672
Fax:   (312) 284-5551


--
This email has been checked for viruses by Avast antivirus software.
https://www.avast.com/antivirus

---

**Daniel Silvers** <ds@htu.io>                     Mon, Mar 15, 2021 at 10:57 AM
To: Svetlana Kaplina <skaplina@elanlawgroup.com>
Cc: Alex Kaplin <ak@htu.io>, lefranc.fabrice@hotmail.fr

Hi everyone,
Sending our zoom address.

https://us02web.zoom.us/j/3348507797?pwd=B38Tqc3VTps



On Mon, Mar 15, 2021 at 9:40 AM Svetlana Kaplina <skaplina@elanlawgroup.com> wrote:

Good morning, everyone,

I just spoke to Fabrice Lefranc, and he agreed to help me with the project, which made me very happy. Fabrice got his legal education in France, but we've worked together on many U.S. legal projects, so he is familiar with the U.S. legal system, and he is great at research His participation will allow us to speed up the process and bring everything into compliance with the U.S. laws sooner rather than later. His familiarity with the European law will also be helpful in the future, if and when it becomes relevant.

I would like to have a call this morning with all of us, to first introduce Fabrice, allow him to ask logistical questions, and then begin to go over the technology. Daniel, please keep in mind that the goal at this point is not to for us to understand the technology in great detail, but only what is (or may be) legally relevant.

What time can we all get on the phone/zoom? I know that Fabrice is available now, and I'm hoping we can do it between now and the next two hours?


--

Svetlana Kaplina
Attorney
Elan Law Group
73 W. Monroe
Chicago IL 60603
Phone: (312) 772-5672
Fax:  (312) 284-5551

--
This email has been checked for viruses by Avast antivirus software.
https://www.avast.com/antivirus

---

**Svetlana Kaplina** <skaplina@elanlawgroup.com>
To: Daniel Silvers <ds@htu.io>
Cc: Alex Kaplin <ak@htu.io>, lefranc.fabrice@hotmail.fr

Mon, Mar 15, 2021 at 10:58 AM

What time should we connect?

On 3/15/2021 10:57 AM, Daniel Silvers wrote:

Hi everyone,
Sending our zoom address.

https://us02web.zoom.us/j/3348507797?pwd=B38Tqc3VTps



On Mon, Mar 15, 2021 at 9:40 AM Svetlana Kaplina <skaplina@elanlawgroup.com> wrote:
Good morning, everyone,

I just spoke to Fabrice Lefranc, and he agreed to help me with the
project, which made me very happy. Fabrice got his legal education in
France, but we've worked together on many U.S. legal projects, so he is
familiar with the U.S. legal system, and he is great at research His
participation will allow us to speed up the process and bring everything
into compliance with the U.S. laws sooner rather than later. His
familiarity with the European law will also be helpful in the future, if
and when it becomes relevant.

I would like to have a call this morning with all of us, to first
introduce Fabrice, allow him to ask logistical questions, and then begin
to go over the technology.  Daniel, please keep in mind that the goal at
this point is not to for us to understand the technology in great
detail, but only what is (or may be) legally relevant.

What time can we all get on the phone/zoom?  I know that Fabrice is
available now, and I'm hoping we can do it between now and the next two
hours?


--

Svetlana Kaplina
Attorney
Elan Law Group
73 W. Monroe
Chicago IL 60603
Phone: (312) 772-5672
Fax:   (312) 284-5551


--
This email has been checked for viruses by Avast antivirus software.
https://www.avast.com/antivirus

```
--

Svetlana Kaplina
Attorney
Elan Law Group
73 W. Monroe
Chicago IL 60603
Phone: (312) 772-5672
Fax:   (312) 284-5551
```

 Virus-free. www.avast.com

1/9/22, 8:27 PM
Gmail - wework docs from Daniel Silvers #1
Case: 1:21-cv-04684 Document #: 11 Filed: 01/14/22 Page 17 of 24 PageID #:44



**M** Gmail

Daniel Silvers <daniel.silvers@gmail.com>

---

# wework docs from Daniel Silvers #1
4 messages

---

**Daniel Silvers** <daniel.silvers@gmail.com>                    Mon, Dec 7, 2020 at 2:40 PM
To: Svetlana Kaplina <skaplina@elanlawgroup.com>

**3 attachments**


**_Veer Panchal letter to We Work on April 14, 2020.docx**
337K


**wework_commitment_terms.pdf**
429K


**Rachel Sharp _rachel.sharp@wework.com_.docx**
294K

---

**Svetlana Kaplina** <skaplina@elanlawgroup.com>                Mon, Dec 7, 2020 at 3:29 PM
To: Daniel Silvers <daniel.silvers@gmail.com>

What is the date of Veer's email to Marlene? And what was her response? You mentioned that you also wrote to them at some point, do you have copies of these emails?

On 12/7/2020 2:40 PM, Daniel Silvers wrote:



--

Svetlana Kaplina
Attorney
Elan Law Group
73 W. Monroe
Chicago IL 60603
Phone: (312) 772-5672
Fax:   (312) 284-5551

 Virus-free. www.avast.com

---

**Daniel Silvers** <daniel.silvers@gmail.com>                    Mon, Dec 7, 2020 at 3:41 PM
To: Svetlana Kaplina <skaplina@elanlawgroup.com>

Tue, Apr 14, 2020 at 4:04 PM   the date of the email
Marlene Arzuaga never answered

---------- Forwarded message ---------
From: **Veer Panchal** <veer@htu.io>
Date: Tue, Apr 14, 2020 at 4:04 PM
Subject: HTU Office 18B101
To: Marlene Arzuaga <marlene.arzuaga@wework.com>
Cc: Daniel Silvers <ds@htu.io>

Hello,
We were wondering if it would be possible to freeze our payments for the office during this time. Please let me know if this
is possible.

--
Veer Panchal
+1(309) 807-6554
veer@htu.io

HTU Product Manager



[Quoted text hidden]

---

**Svetlana Kaplina** <skaplina@elanlawgroup.com>          Mon, Jan 11, 2021 at 5:31 PM
To: Daniel Silvers <daniel.silvers@gmail.com>

Hi Daniel,

How's everything?

Could you please send me a copy of the email that says it was sent on April 14th?  The copy you attached is missing the date.

[Quoted text hidden]



Daniel Silvers <ds@htu.io>

---

## FYI
1 message

**Svetlana Kaplina** <skaplina@elanlawgroup.com>　　　　　　　　　　Mon, Dec 14, 2020 at 12:29 PM
To: Daniel Silvers <ds@htu.io>


-------- Forwarded Message --------
**Subject:** Re: WeWork-HTU Membership Agreement
**Date:** Mon, 14 Dec 2020 12:28:39 -0600
**From:** Svetlana Kaplina <skaplina@elanlawgroup.com>
**To:** Rachel Sharp <rachel.sharp@wework.com>, kaitlyn.pasco@wework.com


Perfect - thank you, Rachel.  I will wait to hear from Ms. Pasco with the information I requested.

On 12/14/2020 12:19 PM, Rachel Sharp wrote:

> Hi Svetlana,
>
> Thank you for reaching out on behalf of Daniel Silvers.  I have CC'd a representative from our Legal team to connect with you and resolve this matter.  +Kaitlyn Pasco will be your best point of contact as we move forward.
>
> Best,
> Rachel

> On Thu, Dec 10, 2020 at 5:51 PM Svetlana Kaplina <skaplina@elanlawgroup.com> wrote:

>> Ms. Sharp:
>>
>> My name is Svetlana Kaplina, and I am an Illinois attorney.  I have been representing Daniel Silvers Corp., d/b/a HTU ("HTU"),  in various business matters.
>>
>> I have been contacted by Daniel Silvers in connection with his dispute with WeWork the National ("WeWork").  It is the client's position that there was a Membership Agreement (the "Agreement") betweeen WeWork and HTU, which was terminated in April, 2020.  Yet, WeWork continues to demand payments under the Agreement from Mr. Silvers personally.
>>
>> First, based on my review of the documents provided by Mr. Silvers, he was never a party to any contracts with WeWork in his personal capacity, but only a representative of his company, HTU.  The Agreement (a copy of which is attached hereto) is clear that it is between HTU and WeWork.  While Mr. Silvers signed the Agreement on behalf of HTU, the Agreement expressly states that "by electronically signing the(se) membership agreement(s) ... **your company** is entering into legally binding agreement(s)." (*emphasis added*).   Since Mr. Silvers was not a party to the Agreement, you must immediately cease and desist from all efforts to collect any amounts you allege are due to Wework from Mr. Silvers personally.  It is my understanding that he has received a number of phone calls from various collection agencies.  Please notify your agents of the error, and instruct them accordingly.
>>
>> With respect to HTU's liability under the Agreement, it is my understanding that the Agreement was properly terminated by an email that was sent to WeWork by Veer Panchal on or about April 14, 2020.  The email was in accordance with Section 5(d) of the Agreement, but Wework failed to respond to the email and all the subsequent follow-up phone calls.  WeWork also failed to provide an "exit form" as required by Section 5(d).

To the extent there were any deficiencies in the termination notice, the Agreement was terminated by the fact that WeWork was unable to provide services to HTU between March 21, 2020 and May 30, 2020, by virtue of the Illinois Governor's Executive Order 2020-10, which required cessation of all non-essential business operations.

In order to properly calculate any amounts that are owed by HTU to WeWork (if any) or vice versa, please forward records of any and all payments to WeWork made by the client.  Further, please forward copies of any and all communication between WeWork and HTU (or any of its representatives).  I understand that some communications were via WeWork portal, but the client's access to the portal has been terminated.  Once I receive all the documents, I will be able to conclude the review of this matter and will notify you of HTU's position accordingly.

If you have any questions in the meantime, please don't hesitate to contact me via email or by phone at 312-934-6009.

--

Svetlana Kaplina
Attorney
Elan Law Group
73 W. Monroe
Chicago IL 60603
Phone: (312) 934-6009
Fax:   (312) 284-5551

---

 Virus-free. www.avast.com

--
**Schedule time with me here**

WeWork | Rachel Sharp
Senior Sales Development Representative, Inside Sales
M: +1 765-893-1795
D: +1 646-868-0833
wework.com
Get inspired on Ideas by We and join the WeWork community
*If this email does not apply to you, please email me to unsubscribe.*

--

Svetlana Kaplina
Attorney
Elan Law Group
73 W. Monroe
Chicago IL 60603
Phone: (312) 772-5672
Fax:   (312) 284-5551



Daniel Silvers <ds@htu.io>

---

# regarding wework
3 messages

---

**Daniel Silvers** <ds@htu.io>                          Tue, Mar 23, 2021 at 3:53 PM
To: Svetlana Kaplina <skaplina@elanlawgroup.com>

Hi Svetlana,

my bank is asking regarding WeWork the Bank Address for the wiring details
and Account type: Business Checking. Should I ask WeWork directly?
In addition, my bank has **Description** (optional) is it where I should put "HTU"
as a Payment reference: HTU ?

Thank you,

Daniel Silvers

-------- Forwarded Message --------
**Subject:** Re: the offer
  **Date:** Tue, 16 Feb 2021 11:43:52 -0500
**From:** Christopher Forgione <christopher.forgione@wework.com>
    **To:** Kaitlyn Pasco <kaitlyn.pasco@wework.com>
    **CC:** Svetlana Kaplina <skaplina@elanlawgroup.com>


Hi Svetlana,

Below are the wiring details as requested:

Company Name: 125 S Clark Street Tenant LLC
Bank Account Number: 40630163315629606
Routing Number: 121000248
SWIFT Number: WFBIUS6S
Payment reference: HTU

Let me know if you need anything else.

Best,
Chris

---

**Svetlana Kaplina** <skaplina@elanlawgroup.com>            Tue, Mar 23, 2021 at 5:12 PM
To: Daniel Silvers <ds@htu.io>

Ask WeWork for the address and the type of the account (copy me on the email pls).  "HTU settlement payment" for the
description
[Quoted text hidden]
--
Svetlana Kaplina
Élan Law Group
19 S. LaSalle St., Ste 600
Chicago, IL 60603
Phone: (312) 731-1354
Email: skaplina@elanlawgroup.com

---

NOTICE:  The information in this email and any attachments is confidential and INTENDED FOR THE SOLE USE OF
THE INTENDED RECIPIENT(S) named above. Additionally, it may be ATTORNEY WORK PRODUCT INTENDED FOR
THE SOLE USE OF THE INTENDED RECIPIENT(S) named above, and therefore be legally privileged.  If you are not the

intended recipient, any dissemination, distribution, or copying of this information, or any of its contents, is strictly prohibited. If you have received this email in error, please return it to the sender immediately and delete the original message and any copy of it from your computer system and otherwise.

---

**Daniel Silvers** <ds@htu.io>        Fri, Mar 26, 2021 at 12:49 PM
To: Svetlana Kaplina <skaplina@elanlawgroup.com>, Christopher Forgione <christopher.forgione@wework.com>, Kaitlyn Pasco <kaitlyn.pasco@wework.com>

**Hi All, I sent a $3,994.92 immediate Wire to the account below.**

**Bank and account information**

  Bank Name: Wells Fargo Bank
  Account Type: Business Checking

Company Name: 125 S Clark Street Tenant LLC
Bank Account Number: 40630163315629606
Routing Number: 121000248
SWIFT Number: WFBIUS6S
Payment reference: HTU

  -- Daniel Silvers


[Quoted text hidden]

1/9/22, 11:59 PM
Case: 1:21-cv-04684 Document #: 41 Filed: 01/14/22 Page 24 of 24 PageID #:51
HTU | Token United Mail - a doc we discussed earlier today



Daniel Silvers <ds@htu.io>

---

## a doc we discussed earlier today
3 messages

---

**Svetlana Kaplina** <skaplina@elanlawgroup.com>                          Wed, Mar 17, 2021 at 8:15 PM
To: Daniel Silvers <ds@htu.io>, Alex Kaplin <ak@htu.io>

Hello,

As I stated during our Zoom call today, I began to look at the applicability of the FinCEN's regs, at the same time deciding how to structure the companies, while Fabrice is looking at the applicability of the SEC's regs.

When it comes to such projects, it is always good to put things down on paper, which helps to discern and focus thoughts and ideas.  So I started drafting a document (attached).  The document has multiple goals, which I can explain later.  For now, I would like for both of you to review it CAREFULLY, primarily for accuracy of what is expressed.  As you are doing it, please remember that the document is incomplete ( it is  just a starting point) and it is geared towards applicability of the FinCen regs for now.

It will be helpful if you provide thoughts and comments by writing them in the document itself.  Use whatever tool you prefer (a different color, track changes, comment feature).

Please let me know if you have any questions.

--

Svetlana Kaplina
Attorney
Elan Law Group
73 W. Monroe
Chicago IL 60603
Phone: (312) 772-5672
Fax:   (312) 284-5551


--
This email has been checked for viruses by Avast antivirus software.
https://www.avast.com/antivirus

---

 **FinCEN Analysis.docx**
24K

---

**Daniel Silvers** <ds@htu.io>                          Wed, Mar 17, 2021 at 9:23 PM
To: Svetlana Kaplina <skaplina@elanlawgroup.com>

Svetlana, I will. Thank you, Daniel
[Quoted text hidden]

---

**Daniel Silvers** <ds@htu.io>                          Wed, Mar 17, 2021 at 9:31 PM
To: Svetlana Kaplina <skaplina@elanlawgroup.com>
Cc: Alex Kaplin <ak@htu.io>

Svetlana, I would like to put that document on iCTE docs that we can collaborate. Daniel

---