### UNITED STATES DISTRICT COURT FOR THE
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| Bendtrand Global Services S.A., Runner Runner LLC and Alexander Kaplin | ) ) ) | |
| Plaintiffs | ) | Case No. 21-CV-4684 |
| v. | ) ) | |
| Daniel Silvers | ) ) | |
| Defendant | ) | |

### PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO DISMISS

Plaintiffs, Bendtrand Global Services S.A., Runner Runner LLC and Alexander Kaplin, by and through their attorney, Gene Hook Jr., submit this Response to the Defendant Daniel Silvers' Motion to Dismiss (the "Motion") and in support thereof state as follows:

### LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), to survive a motion to dismiss for failure to state a claim upon which relief can be granted, the complaint must contain only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *EEOC v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir.2007). The complaint must describe the claim in sufficient detail to give the defendant a "fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554 (2007). The complaint "must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level. *Concentra*, 496 F.3d at 776 (quoting *Twombly*, 550 U.S. at 555). When ruling on a motion to dismiss, the court must take "as true all well-pleaded factual

allegations in the complaint and make all plausible inferences from those allegations in the plaintiffs' favor." *Levy v. Pappas*, 510 F.3d 755, 764 (7th Cir.2007).

<b>ARGUMENT</b>

**I.  Complaint States a Cause of Action for Breach of Oral Contract**

In the Motion, the Defendant argues that the Plaintiffs' breach of contract claim should be dismissed.  (Mot., p. 2).  The argument is without merit.

To state a cause of action for breach of contract under Illinois law,[1] a plaintiff must allege: "(1) the existence of a valid and enforceable contract; (2) plaintiff's performance of all required contractual conditions; (3) defendant's breach of the terms of the contract; and (4) damages resulting from the breach." *Lindy Lu LLC v. Ill. Cent. R.R. Co*., 984 N.E.2d 1171, 1175 (Ill. App. 2013).  For a contract to be enforceable, its terms and provisions must enable the court to ascertain what the parties have agreed to do.  *Crestview Builders, Inc. v. Noggle Fam. Ltd. P'ship*, 352 Ill. App. 3d 1182, 1185 (2004) (*citing Pritchett v. Asbestos Claims Management Corp.*, 332 Ill.App.3d 890, 896 (2002)).  A contract is unenforceable if any essential term is left to future negotiations.  *Vill. of Rockton v. Rock Energy Co-op*., 2011 WL 10418590 at *2 (Ill. App. 2011).

Here, the Defendant suggests that the oral contract claim should be dismissed because it lacks material terms.  (Mot., p. 2).  The assertion is without merit, and the allegations in the Complaint sufficiently describe the material terms of the agreement between the parties. Specifically, the Complaint alleges that between February and March of 2018, the parties agreed that Silvers would build software code for a basic version of a DEX, and that his work would be

---

[1] The parties in this case have not made an effective choice of law.  The Motion assumes that Illinois law applies to this dispute, and the Plaintiffs agree.

completed by August of 2018. (Compl., ¶¶ 38-41). It was agreed that, during this time, Kaplin would advance to Silvers $9,000 per month in the form of an interest-free loan. *Id.,* ¶ 44. In addition, it was agreed that Silvers would hire developers to assist Silvers with building the code, and Kaplin would pay them salary. *Id.,* ¶ 42. It was further agreed that Kaplin would purchase all the necessary computer equipment, pay for the rental of an office space and cover other similar expenses. *Id.,* ¶ 43. The parties further agreed that once a functional version of the platform was built, the ownership rights to the technology would be transferred to a new company ("Newco"), and Kaplin and Silvers would become equal shareholders of the company. *Id.,* ¶ 45. After that, Newco would raise additional funds that would be used to finish the project. *Id.,* ¶ 46. These allegations are clear that there were no essential terms left to future negotiations. *Vill. of Rockton*, 2011 WL 10418590 at *2. The allegations provide a fair notice to the Defendant of the claim, and they are sufficient to enable the court to ascertain what the parties have agreed to. *Twombly*, 550 U.S. at 554; *Crestview Builders,* 352 Ill. App. 3d at 1185.

Based on the foregoing, the breach of contract claim is sufficiently stated and should not be dismissed.

### II. Complaint States a Cause of Action for Fraud

In Illinois, the elements of fraud are: (1) a statement of material fact, rather than a promise or opinion; (2) that is false; (3) the person making the statement must know or believe that the statement is false; (4) the person to whom the statement was made must reasonably rely on the truth of the statement; (5) the statement must have been made for the purpose of causing the other party to affirmatively act; and (6) the reliance by the person to whom the statement was made must have led to his injury. *LaScola v. U.S. Sprint Communications*, 946 F.2d 559, 568 (7th Cir. 1991).

3

The Defendant first argues that the allegations of fraud in the Complaint do not comply with the Federal Rule of Civil Procedure 9(b), which requires that fraud is stated with particularity. (Mot., p. 2-3). The argument is without merit.

While Federal Rule of Civil Procedure 9(b) requires that fraud is stated with particularity, Rule 9(b) does not require an exhaustively detailed explanation. *Schaps v. R.A. Transportation Services, Inc.*, 1987 WL 12178, at *3 (N.D. Ill.). Rather, the plaintiff is required to set forth the time, place and substance of the false statements, as well as the identity of the individual making them. *Id.*

Here, the Plaintiffs alleged that, between February and March of 2018, the Defendant and Kaplin had a few meetings in Chicago to discuss their collaboration in creation of a DEX. (Compl., ¶¶ 38-39). During these meetings, the Defendant represented that he had sufficient knowledge and expertise to build a functional version of the DEX. *Id.* at ¶ 30, 89. The representation was false. The Plaintiffs further alleged that starting in or about July of 2018, the Defendant began to make numerous and repeated false statements to the Plaintiffs regarding his work on the DEX. Specifically, the Defendant stated that he was coding "day and night," when in actuality, he did not do any coding. *Id.* at ¶¶ 57, 86. Starting towards the end of 2018, the Defendant repeatedly stated to the Plaintiffs that he was working on building the DEX software, when in actually he used the funds and resources provided by the Plaintiffs to build another type of software, completely unrelated to the DEX. *Id.* at ¶¶ 71-73, 78, 95. Furthermore, starting towards the end of 2018, the Defendant repeatedly stated to the Plaintiffs that the software code for a functional version of the DEX was almost completed, when in actually, no work on the DEX was done. *Id.* at ¶¶ 71-72, 78, 90. The Plaintiffs further alleged that in or about May of 2020, the Defendant stated that it was necessary for him to spend time in Panama City to work

4

on the DEX project and requested that Kaplin rented an apartment for him there. *Id.* at ¶ 70. As it later turned out, the stay in Panama City, as well as Defendant's travels to other exotic destination at the Plaintiffs' expense, were for the Defendant's personal benefit. *Id.* at ¶¶ 67-69. These allegations are sufficiently detailed to satisfy Rule 9(b)'s requirements. *Schaps*, 1987 WL 12178 at *3.

The Defendant next argues that this case involves "nothing more than an employer frustrated by an employee's slow performance." (Mot., p. 4). This argument misses the point: the Complaint does not allege that the Defendant performed the work slowly; the Complaint alleges that the Defendant, in essence, did not perform at all, directing developers to build an entirely different kind of software, instead of the DEX. (Compl., ¶¶ 95-96).

According to the Defendant, this is a straightforward breach of contract dispute, and the allegations of fraud are an unwarranted escalation of the issue. *Id.* at 3. The argument is without merit.

Courts recognize that plaintiffs should not be permitted to make every breach of contract a fraud claim, and, generally, a statement of future conduct is not considered be sufficient basis for a fraud claim. *Bradley Real Estate Trust*, 266 Ill.App.3d at 713–14; *Tibor Machine Prod., Inc. v. Freudenberg–Nok Gen. Partnership*, 1996 WL 99896 at *5 (N.D.Ill.). But this case involves false statements regarding present facts, not promises of future conduct. The Defendant represented to the Plaintiffs that he had sufficient knowledge, expertise and work experience to create a functional version of the DEX. (Compl., ¶¶ 30, 89). Such statements, describing the Defendant's expertise, are statements of present fact. The Defendant further represented that he was coding "day and night," and that the DEX software was almost completed. Statements

regarding characteristics and capabilities of software – in existence at the time the statements were made – were also the statements of present fact.

To the extent some of the statements are construed as statements regarding future conduct, the statements are still actionable as fraud, because they were made with intent to induce reliance. *Bower v. Jones*, 978 F.2d 1004, 1011-12 (7th Cir. 1992) (intentionally false promises made with an intent to induce reliance suffice to state a cause of action for fraud); *see also, Ault v. C.C. Services, Inc.*, 232 Ill.App.3d 269, 173 (Ill. App. Ct. 1992) (a misrepresentation about an intention to act in the future can be actionable, if it is part of a scheme to defraud).

Starting in July of 2018, the Defendant made a series of false statements, knowing that they would not be honored, with intend to induce reliance. From July of 2018 until May of 2021, the Defendant continued to assure the Plaintiffs that the DEX software was being built and was almost completed. (Compl., ¶¶ 57, 63, 72). Deceived by these misrepresentations, Kaplin conducted himself in reliance on the Defendant's false assurances and continued to finance the project. *Id*. at ¶¶ 64-67. It is more than a fair inference that the Defendant made deliberately false promises with the intention that Kaplin would be induced to continue to finance the project for the Defendant's benefit. Such conduct is sufficient to qualify as a "scheme to defraud."

Based on the foregoing, the fraud claim is sufficiently stated and should not be dismissed.

### III.    Complaint States a Cause of Action under the Computer Fraud and Abuse Act ("CFAA")

The Defendant asserts that to state a claim under the CFAA, a plaintiff must show that the defendant accessed a computer either "without authorization," or in a way that "exceeded authorized access." (Mot., p. 4-5). According to the Defendant, the Plaintiffs cannot make such

6

a showing, because the Defendant always had full and complete access to the Companies'
computers, because he was the owner of both Companies. *Id.* The assertion is contrary to the
allegations in the Complaint.

First, the Complaint alleges the Defendant accessed both (1) Kaplin's personal computer
and (2) the Companies' system to cut off Kaplin and the developers' access to it.[2] (Compl., ¶¶
112-116). Kaplin never allowed the Defendant access to his personal computer. In fact, the
Defendant admitted that he gained access to Kaplin's personal computer without Kaplin's
knowledge or authorization, apparently as a misguided attempt to prove that the Defendant was
computer savvy. *Id.* at ¶ 113.

With respect to access to Companies' computers, and contrary to the Defendant's
assertion, he was never an owner of either Company. The Complaint is clear that Kaplin was
always the sole shareholder of both Companies. (Compl., ¶¶ 1-3); *Levy v. Pappas*, 510 F.3d 755,
764 (7th Cir.2007) (providing that when ruling on a motion to dismiss, the court must take as
true all well-pleaded factual allegations in the complaint). The parties did plan to establish
Newco at some point in the future (with Kaplin and Defendant becoming equal shareholders of
Newco), and to transfer the ownership of the DEX software to Newco. (Compl., ¶¶ 45-46). But
the parties intended to do this only after a functional version of the DEX was built. *Id.* at 45.
Since the DEX software was never built, the plan never came to fruition.

The Defendant further asserts that he had full access to all computers by virtue of his
position with the Companies, and the fact that he obtained information with improper purpose is

---

[2] The Defendant appears to be confused by these straightforward allegations, asserting that the Complaint "is
muddled. Sometimes discussing a separate business … then… strangely alleging it was Kaplin's personal
computer." (Mot., p. 6). But allegations are clear that the Defendant accessed *both*, Kaplin's personal computer,
as well as the Companies' system. (Compl., ¶¶ 112-113).

not sufficient to bring this case under the purview of CFAA. (Mot., p. 5). The assertion is unavailing.

The Defendant is correct that, generally, a violation of CFAA does not occur when a person has been granted full access to a computer and obtains the information with improper purpose. *Van Buren v. United States*, 141 S. Ct. 1648 (2021). In *Van Buren*, a police officer was charged with having violated the CFAA after accepting a bribe to run a license plate search in a law enforcement computer database. The Court held that the officer did not "exceed authorized access." The Court acknowledged that the officer acted with improper purpose but held that there was no violation of the CFAA, because the officer had been granted access to the law enforcement computer database. The Court explained that liability under the "exceed authorized access" clause stems from a gates-up-or-down inquiry, meaning a person either can or cannot access certain areas within a system. *Van Buren*, 141 S. Ct. at 1658-59. According to the Court, a person "exceeds authorized access" "when he accesses a computer with authorization but then obtains information located in particular areas of the computer that are off limits to him." *Id.* at 1662.

Under certain circumstances, however, a person who has full access to a computer system may be in violation of CFAA. *Int'l Airport Centers, LLC v. Citrin*, 440 F.3d 418 (7th Cir. 2006). In *Citrin*, the Seventh Circuit held that an employee who had been granted access to protected computers, but then breached his duty of loyalty to the employer, or acquired an adverse interest to his employer, was no longer authorized to access the employer's computers. *Id.* at 420–21.

At first blush, the holdings in *Van Buren* and *Citrin* appear contradictory, but upon closer examination, it becomes apparent that the cases are not inconsistent. *Van Buren* addresses the definition of "exceeds authorized access" clause, and deals with a situation where the

8

information is obtained with improper purpose. *Citrin*, on the other hand, addresses "without authorization" clause, and deals with a situation where an employee breaches his fiduciary duty. According to the holding in *Citrin*, an employee's breach of his duty raise "the gates" and make any subsequent access "without authorization." *Int'l Airport Ctrs., LLC v. Citrin*, 440 F.3d 418, 420-21 (7th Cir. 2006) (reasoning that an employee's breach of fiduciary duty terminates the agency relationship, and with it the access authority, "because the only basis of his authority had been that relationship").

In this case, the Defendant did have full authority to access Companies' computers. But his authority ended – and "the gates" were raised – when he began to make misrepresentations to the Plaintiffs in violation of his fiduciary duty of loyalty and good faith, and act contrary to the Plaintiffs' interest. At this stage of the litigation, the Plaintiffs do not have knowledge as to the exact time when this occurred. Such information will become available in the course of discovery.

It must be noted that the question as to whether "the gates" were up or down at any particular point is a factual dispute that cannot be resolved at the motion to dismiss stage, and it is another reason why the CFAA claim cannot be dismissed at this point of the litigation.

Finally, the Defendant argues that the Plaintiffs failed to allege the CFAA claim with sufficient particularity. (Mot., p. 5-6). However, to state a claim under the CFAA, a plaintiff needs to allege the required elements pursuant to Rule 8(a)(2)'s notice pleading standard, not the heightened pleading standard of Rule 9(b). *Patrick Patterson Custom Homes, Inc. v. Bach*, 586 F. Supp. 2d 1026 (N.D. Ill. 2008).

Based on the foregoing, the CFAA claim is sufficiently stated and should not be dismissed.

## IV. <u>Complaint States a Cause of Action for Conversion</u>

To state a claim for conversion under Illinois law, a plaintiff must allege: (1) unauthorized and wrongful control, dominion, or ownership by defendant over plaintiff's property; (2) plaintiff's right in the property; (3) plaintiff's absolute and unconditional right to the immediate possession of the property; and (4) a demand for possession of the property. *General Motors Corp. v. Douglass*, 206 Ill.App.3d 881 (1990).

The Defendant argues that the conversion claim must be dismissed, because the allegations in the Complaint pertaining to ownership of the property are not clear. Contrary to the Defendant's assertion, the allegations are clear that the property belonged to the Companies and Kaplin was the sole owner of both Companies. (Compl., ¶¶ 1-3). As part of their initial agreement, the parties did plan to establish Newco at some point in the future (with Kaplin and Defendant becoming equal shareholders of Newco), and to transfer the ownership of the DEX software to Newco. (Compl., ¶¶ 45-46). But the parties intended to do this only after a functional version of the DEX was built. *Id.* at 45. Since the DEX software was never built, the plan never came to fruition.

Since it is clear that the property converted by the Defendant always belonged to the Companies and Kaplin, the conversion claim is sufficiently stated and should not be dismissed.

## V. <u>Complaint States a Cause of Action for Unjust Enrichment</u>

The Defendant argues that Plaintiffs cannot bring a claim of unjust enrichment because they allege the existence of a contract. (Mot., p. 7). Illinois courts have held that "where there is a specific contract that governs the relationship of the parties, the doctrine of unjust enrichment has no application." *Guinn v. Hoskins Chevrolet*, 361 Ill. App. 3d 575, 604 (2005). As such, a plaintiff may not recover on both a claim of unjust enrichment and a claim that relies on the

existence of a contract. Nonetheless, a plaintiff may plead claims based on the existence of a contract and a claim of unjust enrichment in the alternative, even though they may not ultimately recover under both theories. *Id*.

Here, the Plaintiffs bring their unjust enrichment claim in the alternative to the breach of contract claim. Therefore, the Plaintiffs have appropriately pled the unjust enrichment claim as an alternative to the breach of contract claim, and the claim should not be dismissed.

WHEREFORE, the Plaintiffs, Alexander Kaplin, Bendtrand Global Services S.A., and Runner Runner LLC, pray that this Court deny the Defendant's, Daniel Silver's Motion to Dismiss, or in the alternative allow the Plaintiffs the amend the Complaint, and grant the Plaintiff any other and further relief that the Court deems just and proper.

Date: May 10, 2022                                   Alexander Kaplin, Bendtrand
                                                     Global Services S.A., Runner
                                                     Runner LLC


                                                     By: /s/ Gene Hook Jr.
                                                     Counsel for the Plaintiffs

Gene Hook
Law Office of Gene Hook Jr.
401 S LaSalle St., Suite 1600 Q
Chicago, IL 60605
Phone: 773-606-1856
Fax: 312-488-2649

11

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that a copy of the foregoing Plaintiffs' Response to Defendant's Motion to Dismiss was served upon all counsel of record this 10th day of May, 2022 via Case Management/Electronic Case Filing ("CM/ECF") System.


/s/ Gene Hook