IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **BENDTRAND GLOBAL SERVICES S.A., RUNNER LLC** and **ALEXANDER KAPLIN,** <br><br>           Plaintiffs, <br><br>     v. <br><br> **DANIEL SILVERS,** <br><br>           Defendant. | Case No. 21 C 4684 <br><br> Judge Harry D. Leinenweber |

### MEMORANDUM OPINION AND ORDER

Starting in 2018, Plaintiff Alexander Kaplin ("Kaplin") and Defendant Daniel Silvers ("Silvers") worked together to develop software related to cryptocurrency trading. After three years, the relationship became untenable and communications between the two ceased. Kaplin then filed a Complaint in this Court, alleging breach of contract, fraud, violations of the Computer Fraud and Abuse Act, conversion, and unjust enrichment. (Dkt. No. 1.) In response, Silvers filed a Motion to Dismiss, alleging that Kaplin failed to state a claim under Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 12.) The Court now decides the Motion.

### I. BACKGROUND

The Complaint alleges the following facts. Plaintiff Alexander Kaplin, a Florida resident, and Defendant Daniel

Silvers, an Illinois resident, met through a mutual acquaintance approximately twelve years ago. (Compl. ¶¶ 1, 4, 9, Dkt. No. 1.) Kaplin's career at that time had focused on working on the American Stock Exchange and as a trader in domestic funds. (*Id.* ¶¶ 7–8.) Silvers represented that he was a software specialist "with extensive experience in building software programs used in trading and analysis of financial products," including working on the New York Stock Exchange and the Intercontinental Exchange. (*Id.* ¶¶ 11–12.) After preliminary discussions, Kaplin, and a third-party (together, the "Traders") retained Silvers to build trading-related software, and Silvers completed the job to the satisfaction of all involved. (*Id.* ¶¶ 10, 13–16.) The Traders then commissioned a second software project to assist with trading stocks, called the "fairer price" (the "FP") software for $20,000. (*Id.* ¶¶ 19–20.) This project was less successful, "crashing and freezing on a regular basis." (*Id.* ¶ 22.) Silvers requested, and was provided, additional $10,000 to fix the software program, with no apparent benefit to the Traders. (*Id.* ¶¶ 23–24.)

In retrospect, this failure could have been a warning against future collaborations. However, Kaplin and Silvers instead "decided to work together to build a decentralized crypto-currency exchange (the "DEX")." (*Id.* ¶ 32.) As set forth in the Complaint, Silvers made the following offer in March of 2018: "[I]f you give

me until August [2018] and guarantee you will cover all expenses until then, I will give you a functional model of the DEX." (*Id.* ¶¶ 38–41.) Kaplin accepted this offer, which included the following financing: (1) outside developers hired by Silvers, (2) all necessary computer equipment, rental of an office space and other overhead expenses, and (3) advancing Silvers $9,000 a month in the form of an interest free loan. (*Id.* ¶¶ 42–44.) Once the program was functional, the parties additionally agreed to transfer the ownership rights to a new company, and Kaplin and Silvers would become equal shareholders of that company. (*Id.* ¶ 45.) This agreement constitutes the bulk of the controversies alleged in the Complaint.

Kaplin paid for the agreed-to expenses either personally or through his two limited liability companies, Plaintiffs Runner Runner LLC, and Bentrand Global Services, S.A. (*Id.* ¶¶ 50–54.) Around July of that year, Silvers stated that he could no longer complete the project by August 2018, but that the project would be completed with continued financing from Kaplin. (*Id.* ¶¶ 55–58.) Kaplin alleges he had misgivings but continued to finance the project. (*Id.* ¶¶ 59–65.) Kaplin additionally financed Silvers business travels related to the development of the DEX software, including trips to Europe, South Korea, Singapore, and Panama City. (*Id.* ¶ 67, 69.) Kaplin now alleges that at least some of these

business travels were not actually related to the development of DEX software but for personal reasons. (*Id.* ¶ 68.) Kaplin reports that, by the end of 2018, he regularly raised concerns about the delays and related excess costs. (*Id.* ¶ 71.) Silvers agreed to reduce his future shares in Newco from 25% to an eventual 12.5%. (*Id.* ¶ 74.) Kaplin continued to bankroll the project for another two years. (*Id.* ¶ 75.)

At the end of 2020, Kaplin stated he would be unable to continue financing the project for more than a few more months. (*Id.* ¶ 77.) Silvers assured Kaplin he would be finished by April 15, 2021, and that this would be a firm deadline. (*Id.* ¶ 78.) In light of this agreed deadline and in anticipation of introducing the software on the market, Kaplin hired legal counsel in March 2021 to engage in a regulatory compliance review of DEX. (*Id.* ¶ 79.) Silvers resisted providing information to legal counsel, and it "[g]radually . . . became apparent" that Silvers representations that "'a functional DEX was almost completed' turned out to be a blatant lie." (*Id.* ¶¶ 80—90.)

Silvers statements in March and April of 2021 were erratic and concerning to Kaplin. (*Id.* ¶ 104.) Silvers demanded a salary, refused to acknowledge his previous agreed-to change in future shares of Newco, and refused to attend a meeting with potential purchasers of DEX by "falsely claiming he was ill and had to go to

the hospital." (*Id.* ¶ 105—110.) On May 1, 2021, Kaplin and Silvers got into an argument about the project. (*Id.* ¶ 111.) Silvers stated that Kaplin did not know anything about technology and thus Silvers would not provide the DEX code to Kaplin. (*Id.* ¶ 112.) Instead, Silvers stated that "he had always had access to Kaplin's personal computer without Kaplin's knowledge." (*Id.* ¶ 113.) Minutes later, Silvers cut off Kaplin and the other software developers' access to their email accounts. (*Id.* ¶ 114.) He then cut off all access to the management software, the database containing the DEX code, access to Kaplin's other Companies' business records and accounts, as well as physically confiscating a computer from a software developer who was working in Panama City. (*Id.* ¶ 115—117.) That same day, Kaplin responded with a letter and email to Silvers, demanding that Silvers restore access to the code, email, and accounts, as well as all of the Companies' property and assets that were in Silvers' possession, including computers, flash drives, hard drives, and phones. (*Id.* ¶¶ 118—20.) Kaplin repeated the demand on May 17, 2021. (*Id.* ¶ 122.) Silvers did not comply with or respond to either demand. (*Id.* ¶ 121, 123.)

On September 12, 2021, Kaplin filed a five-count Complaint in this Court, alleging breach of contract, fraud, violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(5)(C), conversion, and unjust enrichment. (Dkt. No. 1.) On January 14,

2022, Silvers filed a Motion to Dismiss all counts under Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 12.) The Court now decides the Motion.

## II. LEGAL STANDARD

Under Rule 12(b)(6), a motion to dismiss challenges the sufficiency of the complaint and "dismissal of an action under this rule is warranted only if no relief could be granted under any set of facts that could be proved consistent with the allegations." *Christensen v. Cty. of Boone*, 483 F.3d 454, 458 (7th Cir. 2007) (internal citations omitted). To overcome a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). When considering a Rule 12(b)(6) motion to dismiss, the Court must "accept[ ] as true all well-pleaded facts alleged, and draw[ ] all possible inferences in [the plaintiff's] favor." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

## III. DISCUSSION

In his Complaint, Plaintiff Kaplin pleads diversity jurisdiction and enters claims under state and federal law. (Dkt. No. 1.) Although the choice of law for the state claims is not discussed in the Complaint, Silvers' Motion to Dismiss assumes that Illinois law applies, and Plaintiffs agree to use Illinois law in their response. (Mot. at 2, Dkt. No. 12; Resp. at 2 n.1, Dkt. No. 19.) Under Illinois choice-of-law rules, the forum law applies "unless an actual conflict with another state's law is shown, or the parties agree that forum law does not apply." *Sosa v. Onfido, Inc.*, 8 F.4th 631, 637 (7th Cir. 2021) (quoting *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 808 (7th Cir. 2020)). As the parties do not identify any conflict or disagreement with Illinois law, the Court applies Illinois law in this decision to the state counts regarding breach of contract, fraud, conversion, and unjust enrichment.

### A. Breach of Oral Contract

Kaplin first pleads that Silvers breached the oral contract between the parties by failing to build the DEX software. The formation of an oral contract under Illinois law requires the same elements of a written one, which include "the existence of a valid and enforceable contract, performance by the plaintiff, breach of the contract by the defendant, and resultant damages or injury to

the plaintiff." *Sheth v. SAB Tool Supply Co.*, 990 N.E.2d 738, 754 (Ill. App. Ct. 2013) (citing *Razor Capital v. Antaal*, 972 N.E.2d 1238, 1246 (Ill. App. Ct. 2012)). Silvers argues that the Complaint pleads no specifics and offers only "formulaic recitation of the elements of the cause of action." (Mot. at 2 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).) The Court's review of the Complaint shows concrete allegations. Specifically, the Complaint alleges that the parties agreed that Kaplin would finance the operational costs related to producing the DEX software in exchange for Silvers producing the software. The Complaint then alleges that Kaplin financed Silvers as promised, but Silvers did not produce the DEX software. Kaplin's financial outlay without return, in violation of the agreement, sufficiently alleges damages. The Court finds that the Complaint alleges a breach of contract and denies the motion to dismiss this count.

### B. Fraud

Kaplin's next count alleges that Silvers statements, including representations that he was coding "day and night," and that the DEX software was almost completed, were false and part of a scheme to defraud Kaplin. When alleging fraud or mistake, "a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

*Id.* Even in the Rule 9(b) context, however, the Court cannot "credit a complaint's conclusory statements without reference to its factual context," and the well-pleaded facts must give rise to a plausible inference as to Defendant's state of mind. *Ashcroft*, 556 U.S. at 665.

The purpose of Rule 9(b)'s heightened pleading standard for fraud is "to force the plaintiff to do more than the usual investigation before filing his complaint." *Ackerman v. Nw. Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999). "By requiring the plaintiff to allege the who, what, where, and when of the alleged fraud, the rule requires the plaintiff to conduct a pre-complaint investigation in sufficient depth to assure that the charge of fraud is responsible and supported, rather than defamatory and extortionate." *Id.*

In support of his Motion to Dismiss, Kaplin cites to *Reger Development, LLC v. National City Bank*, 592 F.3d 759 (7th Cir. 2010). In *Reger Development*, the plaintiff's fraud claim was based on a promissory note it signed with the defendant. The plaintiff claimed that the promissory note was "ambiguous and misleading," but the Seventh Circuit found that it was neither. *Id.* at 767. The Seventh Circuit held the disputed promissory note was "a straightforward demand instrument accompanied by a personal guaranty by the borrower's sole member." *Id.* As a result, the

Seventh Circuit stated that it could not "draw the inference that [the plaintiff] asks us to make without ignoring the contract altogether." "A 'party cannot close his eyes to the contents of a document and then claim that the other party committed fraud merely because it followed this contract.'" *Id.* (quoting *N. Trust Co. v. VIII S. Mich. Assocs.*, 657 N.E.2d 1095, 1103 (Ill. App. 1995). Silvers argues that similarly here Kaplin pleads fraud because he feels a "sense of betrayal" about the failed company, but that it would be an unwarranted escalation to allow Silvers to plead fraud in a "straightforward breach of contract dispute." (Mot. at 3 (quoting *Cornell Glasgow, LLC v. La Grange Properties, LLC*, No. CIV.A. N11C-05013JRS, 2012 WL 2106945, at *1 (Del. Super. Ct. June 6, 2012)).) The Court finds this case inapplicable here as the Complaint alleges that Silvers did not follow the oral contract, not that there was an oral contract separate from a written one.

In order to show fraud, Kaplin must plead that Silvers "(i) made a false statement of material fact; (ii) knew or believed the statement to be false; (iii) intended to and, in fact, did induce the plaintiff to reasonably rely and act on the statement; and (iv) caused injury to the plaintiff." *Reger Dev.*, 592 F.3d at 766. Kaplin points to the following three statements as both material and false: Silvers stated to Kaplin that he was coding "day and

night;" Silvers stated to Kaplin that the DEX was almost completed, and Silvers stated to Kaplin that Silvers was building a technology that was unique and innovative. (Compl. ¶¶ 132–34.)

Kaplin's allegations do not meet the threshold "who, what, where, and when" of the heightened pleading standards set forth in Rule 9(b). *Ackerman*, 172 F.3d at 469. While the "who" and the "what" are sufficiently documented, the Court fails to find sufficient details about the "when" and the "where" to meet Rule 9(b). Kaplin and his legal counsel investigated Silvers' work in March and April 2021, which encompassed the creation of reports and discussions with the software developers hired by Silvers. (*Id.* ¶¶ 79–98.) As a result, Kaplin can allege with specificity that the "what" of Silvers' representations were false at the time they were made. (*Id.* ¶ 85.) For example, Kaplin alleges that he has evidence that Silvers built less than half a percent of the DEX code. (*Id.* ¶ 87.) Kaplin also alleges that, as explained by the software developers, there has never been a functional or close to functional DEX, and that all of Silvers' representations otherwise were lies. (*Id.* ¶ 90.)

In contrast, Kaplin does not plead the "when" or "where" with any specificity. Kaplin's Complaint only alleges that these statements were made to Kaplin at some point over the three years of their working relationship, and does not mention where the

statements were made, and whether, for example, the statements were made in person or via phone, e-mail, or other medium. As a result, Kaplin has not linked his decision to continue to extend financial support to Silvers with the specific false statements alleged in the complaint. The Court grants the motion to dismiss this count.

### C. Computer Fraud and Abuse Act

Silvers next challenges Kaplin's allegations relating to the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(5)(c). To state a claim, Kaplin must allege that Silvers "(1) knowingly and with the intent to defraud, (2) accessed a protected computer, (3) without authorization or in excess of her authorization, and (4) by such conduct obtained something of value and furthered the intended fraud." *Motorola, Inc. v. Lemko Corp.*, 609 F.Supp. 2d 760, 768 (N.D. Ill. 2009).

Silvers challenges whether or not the actions alleged in the complaint were "without authorization or in excess of authorization" as required by statute. *Id*. The Supreme Court recently addressed the scope of this clause in *Van Buren v. United States*, 141 S.Ct. 1648 (2021). In *Van Buren*, a police sergeant ran a license-plate search in a law enforcement computer database in exchange for cash. *Id.* at 1652. Van Buren argued that the clause "without authorization" protects computers from outside hackers

who have no authorization to access any information, whereas "exceeds authorized access" protects information against "inside hackers," who "exceed the parameters of authorized access by entering an area of the computer to which that authorization does not extend." *Id.* at 1658 (cleaned up). The Supreme Court agreed. Because running license-plate searches was within Van Buren's job responsibilities and he merely "obtained information from the database for an improper purpose," an action outside the scope of the statute. *Id.* at 1662.

Silvers argues that this narrower reading of Section 1030 excludes the claim made by Kaplin in the Complaint. The Court disagrees for two reasons. First, unlike *Van Buren*, Silvers and Kaplin are alleged to have entered into an oral contract, as opposed to an employer-employee relationship. As a result, the scope of Kaplin's access is not clearly delineated like *Van Buren* or otherwise agreed on by the parties. In a motion to dismiss, the Court draws all possible inferences in Kaplin's favor, including the inference that Kaplin had not authorized access to some or all of the project's software and hardware. The Court finds it premature to dismiss this count at this stage in the proceedings.

Second, even if, as Silvers claims, he had authorized access as defined in *Van Buren* to all of the software and related physical equipment related to the development of the DEX software, Kaplin

additionally alleges that Silvers accessed Kaplin's personal computer and Kaplin's unrelated Companies' business records and accounts. Silvers' Motion to Dismiss does not address this allegation, other than to claim that the Complaint was "muddled" in its accusations. (Mot. at 6.) Silvers' argument, that the oral contract to build DEX software provided Silvers with unlimited access to the related hardware and software, does not address the allegations to Kaplin's personal computer and unrelated accounts.

Silvers also briefly contends that the CFAA might be under the heightened pleading standards set forth under Rule 9(b) and that Kaplin failed to articulate the "who, what, when, and where" of the alleged transgression. District courts in the Northern District of Illinois have generally either declined to apply the heightened pleading standard, or to apply the heightened standard only to the portions of the CFAA that require fraudulent intent. *See, e.g.*, *Motorola, Inc. v. Lemko Corp.*, 609 F.Supp. 2d 760, 765 (N.D. Ill. 2009); *Patrick Patterson Custom Homes, Inc. v. Bach*, 586 F.Supp. 2d 1026, 1031 (N.D. Ill. 2008). The Court adopts the second approach and reviews whether the alleged violations of the CFAA involve an intent to defraud.

Kaplin alleges violations under Section 1030(a)(5)(C), which prohibits an individual from "intentionally access[ing] a protected computer without authorization, and as a result of such

conduct, causes damage and loss." 18 U.S.C. § 1030(a)(5)(C). Because this portion of CFAA does not allege fraud, the Court does not require Kaplin to plead under the heightened pleading standard in Rule 9(b). The Court denies the motion to dismiss the CFAA count.

### D. Conversion

Under Illinois law, conversion requires Kaplin to plead "(1) an unauthorized and wrongful assumption of control, dominion, or ownership by a person over the property of another; (2) plaintiff's right in the property; (3) plaintiff's right to immediate possession of the property; and (4) a demand by plaintiff of possession thereof." *Eggert v. Weisz*, 839 F.2d 1261, 1264 (7th Cir. 1988) (quoting *de St. Aubin v. Johnson*, 151 Ill.App.3d 184, 188, 104 Ill. Dec. 97, 101, 502 N.E.2d 360, 364 (1st Dist.1986)). In his Motion to Dismiss, Silvers admits that Kaplin "hit[s] each element," but he argues that the ownership of the materials at issue is unclear, preventing a claim for conversion. Silvers' objection appears to be factual rather than legal in nature. Because the Court gives all inferences in favor of the plaintiff at the motion to dismiss stage, the Court accepts Kaplin's pleading that the property belonged to him and his Companies and not to Silvers and denies the motion to dismiss this count.

### E. Unjust Enrichment

Finally, Silvers objects to Kaplin's unjust enrichment claim. Unjust enrichment is an equitable remedy and only available when there is no remedy at law. *Guinn v. Hoskins Chevrolet*, 836 N.E.2d 681, 704 (Ill. App. Ct. 2005) Specifically, Silvers argues that Kaplin attempts to plead unjust enrichment in the alternative, but then incorporates all of the prior allegations in the contract. (Compl. ¶ 150 ("Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 123, as fully set forth herein.")) As explained by the Seventh Circuit, when plaintiffs "incorporate by reference allegations of the existence of a contract between the parties" in an unjust enrichment claim, this "pleading error prevents [the] unjust enrichment claim from going forward." *Gociman v. Loyola Univ. of Chicago*, 41 F.4th 873, 887 (7th Cir. 2022). The Court here grants the motion to dismiss this claim based on the pleading error.

### IV. CONCLUSION

For the reasons set forth herein, the Court grants in part and denies in part Silvers' Motion to Dismiss (Dkt. No. 12) as follows:

1. the Motion to Dismiss as to Counts I, III and IV are denied; and

2. the Motion to Dismiss as to Counts II and V are granted.

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

Dated: 8/29/2022

- 17 -