UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Bendtrand Global Services S.A., Runner Runner LLC and Alexander Kaplin | ) ) ) | |
| Plaintiffs | ) ) | Case No. 21-CV-4684 |
| v. | ) ) | Honorable Sunil R. Harjani Judge Presiding |
| Daniel Silvers | ) ) | |
| Defendant | ) ) | |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT**

The Plaintiffs, Bendtrand Global Services S.A., Runner Runner LLC and Alexander Kaplin (collectively, the "Plaintiffs"), by and through their attorney, Gene Hook, submit this Reply (the "Reply") in Support of their Motion for Partial Summary Judgment (the "MSJ") and in support thereof state as follows:

Defendant's Response to the Motion for Summary Judgment (the "Response") is supported solely by one affidavit – Defendant's own (the "Affidavit"). Defendant did not produce any affidavits from other witnesses. In fact, he never disclosed any witnesses. His failure to identify a single witness highlights the fact that no one exists to corroborate Defendant's claims. The Affidavit is not supported by any credible or admissible documentary evidence.[1] The Affidavit itself is so procedurally deficient that it has necessitated a separate motion to strike, which is filed concurrently with this Reply.[2]

---

[1] The Plaintiffs have not provided any documentary evidence, but this was because the Defendant cut off their access to all business records. This fact was alleged in the Complaint and supported by affidavits. Dkt. # 1, Compl., ¶¶ 114-116; Dkt. #105-5, Barragan Aff., ¶¶ 31-33.

[2] To avoid unnecessary repetition, the Plaintiffs will not reiterate the objections raised in their motion to strike the affidavit; however, all objections set forth in that motion are hereby incorporated by reference.

1

Setting aside the deficiencies addressed in the motion to strike the Affidavit – and if the Court chooses to deny the motion and consider the Affidavit – the Defendant failed to create a genuine dispute of material fact. While Response to Statement of Material Fact ("RSMF") denies each paragraph of the SMF, the Affidavit fails to support the denials. Since the denials are not supported by any evidence as required by Local Rule 56.1, the Court should disregard them and deem SMF admitted. Since the Defendant failed to demonstrate a genuine dispute of material fact, the Court should grant summary judgment in favor of the Plaintiffs.

I. **Legal Standard when Response to MSJ is Supported by Self-Serving Affidavit**

Prior to 2013, the courts in the Seventh Circuit treated self-serving affidavits as inherently insufficient. In Hill v. Tangherlini the Court held that a self-serving affidavit should not be automatically disregarded. Hill, 724 F.3d 965 (7th Cir. 2013). While courts now do not dismiss self-serving affidavits outright, they still require the non-moving party to provide sufficient evidence. *Doxtator v. O'Brien*, 39 F.4th 852, 860 (7th Cir. 2022). When the evidence presented by non-moving party is merely colorable, or it is not significantly probative, summary judgement is granted. *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). "Before the evidence is left to the jury, there is a preliminary question for the judge, *not whether there is literally no evidence*, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it." *Anderson* at 50 (*emphasis added*).

II. **Defendant Failed to Produce Sufficient Evidence to Raise a Genuine Issue of Material Fact with Respect to Fraud Claim**

1. **Defendant Failed to Produce Sufficient Evidence that he did not Make False Statements of Material Fact**
In his Response and RSMF, the Defendant denies making any false statements. First, the Response and RSMF deny that the Defendant made PowerPoint presentations to Kaplin and Typaldos. Resp., p. 3; RSMF ¶¶ 5-6. But these denials are unsupported by any evidence to

2

substantiate them. RSMF cites paragraph 89 of the Affidavit, which states: "Kaplin included Typaldos in the ICTE PitchDeck as ICTE advisor." Dkt. #114-1, Silvers Aff., ¶ 89. This statement, however, does not directly address or refute the Plaintiffs' specific assertions regarding PowerPoint presentations. While Typaldos was indeed engaged as an advisor for the project, this fact is irrelevant to the question of whether the PowerPoint presentations were made. Dkt. # 105-2, Typaldos Aff., ¶¶ 6-7. Additionally, the Affidavit's assertion that Typaldos depended on his partner for "technical discussions," and that this reflects Typaldos' lack of expertise, is speculative, lacks personal knowledge and is unwarranted. Silvers Aff., ¶ 96. The involvement of Typaldos' associate could have been due to convenience, sharing of responsibilities, or countless other reasons. Typaldos' decades of experience and remarkable achievements in the tech industry stand as a testament to his expertise. Typaldos Aff., ¶¶ 2-4.

Not only does the Defendant fail to refute the Plaintiffs' testimony regarding the PowerPoint presentations, he also fails to adequately present his version of the facts concerning how the DEX reports were made and what they contained. Paragraph 165 of the Affidavit provides a vague statement that project reports were communicated via "collaborative tools, technical reports, and iterative meetings." Silvers Aff., ¶ 165. Another paragraph states that the Defendant "accurately communicated the technical advancement and challenges of the DEX." Silvers Aff., ¶ 167. These statements are insufficient, as they are too general and vague. The Defendant does not describe the "technical reports," and does not explain to whom they were provided. No copies of the "technical reports" were ever produced in discovery. There are also no details about the "iterative meetings," as to which team members participated in the meetings, or when and where the meetings were held. Vague, generalized, and conclusory statements, lacking concrete details and specificity, do not allow a reasonable factfinder to infer anything in

3

the Defendant's favor. *O'Regan v. Arbitration Forums, Inc.*, 246 F.3d 975, 989 (7th Cir. 2001) ("[W]e will only credit facts in an affidavit that are sufficiently definite and particular").

Three witnesses provided credible testimony regarding Silvers' representations about progress on the DEX. Yulya Larin,[3] provided a detailed account of two phone conversations where the Defendant made representations about the status of the DEX. Dkt. # 105-3, Larin Aff., ¶¶ 7-23. In paragraphs 104-111 of the Affidavit, the Defendant addresses Larin's testimony but fails to refute it in any meaningful way. Silvers Aff., ¶¶ 104-111. Instead, the Affidavit states that it was not disclosed to the Defendant that Larin was listening to these conversations, and that the conversations allegedly violated some policy that required all discussions to be via Signal. *Id.*, ¶¶ 106-107. None of these points refute Larin's testimony that during these conversations, the Defendant swore to Kaplin that the DEX was almost completed and would be functional within a few months. The Affidavit claims that Larin lacked "proficiency in technical English," but Larin's testimony is not about any technical details. *Id.*, ¶ 108. In fact, Larin acknowledged that there were technical discussion that she did not fully understand. Larin Aff., ¶ 23.

Similarly, Maryan Yakubovsky testified that in early 2019, the Defendant claimed that there was significant progress on the DEX and that it was almost completed. Dkt. # 105-4, Yakubovsky Aff., ¶¶ 6-14. The paragraphs of the Affidavit that address Yakubovsky's testimony consist mostly of irrelevant or inflammatory claims, that are based on hearsay, rather than personal knowledge. Silvers Aff., ¶¶ 124, 127-131. The Defendant also claims that Yakubovsky did not speak sufficient English to properly understand the conversation. *Id.* ¶ 126. However, this statement lacks proper foundation, as the Defendant does not explain how he came to know or

---

[3] Yulia Larin is the same individual disclosed in the initial disclosures under her maiden name of Yulia Latkova. Latkova was the name by which the Plaintiffs knew the witness at the time of disclosure. The discrepancy in the names arose because the witness is now known by her married name, Larin. It is important to clarify that Yulia Larin and Yulia Latkova is one and the same individual.

can competently testify to Yakubovsky's inability to understand English. Fed. R. Evid. 901. Yakubovsky submitted an affidavit in English, sworn under oath, which clearly demonstrates his ability to understand and communicate in the language.

The Defendant further states that the bar atmosphere where the conversations took place was loud, and the restaurant environment was formal, both allegedly preventing a "meaningful discussion." *Id.*, ¶ 126. But people often have conversations in noisy bars or formal dining settings, adjusting the volume of their voice appropriately. Yakubovsky's testimony was to a simple fact that the Defendant said the DEX was almost completed, not about any other details of the conversation that he may have missed or misunderstood.

Svetlana Kaplina also testified the Defendant stated that the completion date for the DEX was April 1, 2021. Dkt. #111-1, Kaplina Aff., ¶¶ 9-11. Once again, the Defendant does not refute Kaplina's testimony. Instead, he attacks Kaplina's affidavit with improper legal conclusions, as well as unsubstantiated claims of "unethical behavior," "aggression," and "disregard for legal and professional standards." Silvers Aff. ¶¶ 151-161.

Two software developers working on the DEX project credibly testified that development of the DEX never progressed beyond the creation of its foundational component – the blockchain – and even the blockchain was never fully completed. Dkt. #105-6, Panchal Aff., ¶¶ 16-18; Dkt. #105-5; Barragan Aff., ¶¶ 22-23. The testimony shows that Defendant did not devote his efforts to building the DEX: he did not code himself, he did not provide timely feedback, he misdirected Plaintiffs' resources to his own side software projects, and he was exploring other uses for the blockchain. Panchal Aff., ¶¶ 8, 11-15; Barragan Aff., ¶¶ 13-21; Kaplin Aff., ¶¶ 26-28.

The Defendant responds to the developers' affidavits in the same inadequate manner. Rather than addressing the substance of their credible testimony, the Defendant responds to

affidavits with improper denials (*e.g.* Silvers Aff., ¶¶ 112, 122, 132), legal conclusions (*e.g. Id.,* ¶¶ 121, 133, 135), vague and irrelevant statements (*e.g. Id.,* ¶¶ 114, 117, 136).[4] None of the assertions in the Affidavit related to Panchal and Barragan's testimony are based on personal knowledge or supported by the proper foundation for the statements. As a whole, the Affidavit does not effectively refute the substance of the developers' testimony.

The Response seems to suggest that the Defendant's representations that substantial progress had been made were not false, because the DEX was a difficult and complicated project. Resp., p. 5. However, according to the Defendant's representations, the DEX was on the verge of completion, when, in reality, the development of its essential components had never even begun. Panchal Aff., ¶¶ 16-18; Barragan Aff., ¶¶ 6-8, 22-23.

The Defendant further argues that his representations were mere puffery. "Puffing" refers to exaggerations commonly made by sellers about the quality of their product, the truth or falsity of which cannot be precisely determined. *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill.2d 100 (2005). Puffery consists of meaningless superlatives that no reasonable person would take seriously. *Barbara's Sales, Inc. v. Intel Corp.*, 227 Ill. 2d 45, 73 (2007). Here, statements made by the Defendant, such as that there was consistent and significant progress on the DEX, that it was nearing completion, that the DEX code was technologically advanced, and that the Defendant was fully dedicated to working on the DEX, are not puffer – they are statements of fact, the truth or falsity of which can be determined. While it may be argued that terms like "technologically advanced" or "revolutionary" are puffery, these words are not mere meaningless superlatives. Rather, they convey specific qualities – complexity and innovation –

---

[4] The Affidavit also claims that the developers lacked expertise (Silvers Aff., ¶¶ 118, 134), which directly contradicts paragraph 14 of the RSMF, which states that the "development team was composed of highly skilled professionals." RSMF, ¶14.

that can be verified by examining technical specifications or code of the software. More importantly, the Defendant did not use these terms in isolation; they were accompanied by technical details and explanations that provided substance to the claims. Larin Aff., ¶ 23; Typaldos Aff., ¶ 12.

2. **Defendant Failed to Produce Sufficient Evidence that he Lacked Knowledge and Intent to Deceive**

The Plaintiffs argued that Silvers knew the true stage of the DEX's progress because he was directly involved in the management of the DEX. The Defendant denies direct involvement, claiming that he was a "subject matter expert" within a "distributed agile framework … emphasizing collaboration, transparency, and shared responsibility, rather than direct centralized management and oversight." RSMF, ¶ 21. At the same time, the Affidavit asserts that the Defendant's role was that of COO and lead developer.[5] Silvers Aff., ¶ 68. None of these descriptions of the Defendant's role refute the Plaintiffs' specific assertion regarding Defendant's involvement in the management of the DEX. Defendant's knowledge that work on the defining components of the DEX had not begun, and his repeated misrepresentations to the contrary, demonstrate that he intentionally misled the Plaintiffs.

Furthermore, the Defendant benefited from Kaplin's continued financing: he instructed developers to work on his various side projects, and he explored other potential uses of the blockchain (which was nearing completion) for his own benefit. Panchal Aff., ¶¶ 11-15; Barragan Aff., ¶¶ 18-21. This demonstrates intent to induce reliance.

3. **Defendant Failed to Produce Sufficient Evidence of no Reasonable Reliance**

---

[5] The Defendant's position regarding his involvement in the project has changed throughout this litigation. First, he asserted that his company had a joint venture relationship with the Plaintiff Companies. Dkt. #11, p.4. He later claimed that he was a co-owner of the Plaintiff companies. Dkt. #12, p.5. Subsequently, he asserted that he was an employee of Runner Runner. Dkt. #35, p. 22.

Plaintiffs demonstrated reasonable reliance because Kaplin and Silvers had been friends for many years, and Kaplin considered Silvers a trusted friend. Kaplin Aff., ¶4. In his Response, the Defendant denies this, claiming that the relationship between Kaplin and Silvers was "strictly professional." RSMF ¶1. However, the Defendant admitted the allegations of friendship in his Answer to the Complaint. Specifically, the Complaint alleged that Kaplin and Silvers had become "friends and began to socialize on a regular basis." Dkt. #1, Compl., ¶17. It further alleged that in "2016, when Silvers moved to Chicago, the two continued their relationship, with Silvers and his wife visiting and staying with Kaplin at his house in Roxbury, Connecticut." *Id*., ¶18. In his Answer, the Defendant admitted these allegations. Dkt. #35, Answer, ¶¶17-18. This judicial admission prevents Defendant from asserting a contrary position now.

Kaplin is not a software expert; he is a financial market and securities specialist, and that has been his sole profession throughout his career. Compl., ¶¶ 7-8; Answer, ¶¶ 7-8. Silvers' presentations on the progress of the DEX were so convincing that they misled even someone with significant expertise in decentralized finance technology. Typaldos Aff., ¶¶ 2-4, 12-16. In light of this, Kaplin's reliance on the representations was reasonable.

4. **Damages**

Plaintiffs acknowledge that they have not presented sufficient evidence to establish damages at this stage. Therefore, Plaintiffs respectfully request that the Court rule on the liability portion of the MSJ and reserve its decision on damages for trial.

III. **Defendant Failed to Produce Sufficient Evidence to Raise a Genuine Issue of Material Fact with Respect to Conversion Claim**

The Response does not appear to challenge that the Plaintiffs have the right to all property used in connection with the DEX project, and the Defendant has admitted that Plaintiffs paid for all of it. Answer, ¶54. With respect to other elements of the conversion claim, the

Response is less clear. RSMF does dispute all statements in SMF with respect to the claim. RSMF, ¶¶ 51-56. Yet, these denials are not supported by any evidence, not even the Affidavit, as deficient as it may be, in violation of Local Rule 56.1. Paragraphs 51-56 of RSMF do cite to the Affidavit, but the citations do not support the denials. RSMF, ¶¶ 51-56.

To the extent the Court is willing to sift through approximately 200 paragraphs of the disorganized narrative in the Affidavit to find support for the denials, the Affidavit does not appear to contain any. Regarding Plaintiffs' assertion that a demand for the return of property was made and that the property was not returned, the Affidavit responds with legal conclusions only, stating that the "claim is procedurally flawed," "misrepresents the facts and relies on speculative assertions," and "fails to meet the evidentiary standard." Silvers Aff., ¶ 172-173. These are mere legal conclusions, unsupported by factual evidence, and as such, they have no place in an affidavit, which should contain only facts based on personal knowledge.

## CONCLUSION

For the reasons set forth above, the only evidence submitted by the Defendant – the Affidavit – is riddled with deficiencies and fails to refute specific evidence presented by the Plaintiffs with admissible evidence based on personal knowledge. Affidavit's irrelevant statements, blanket denials, unresponsive and vague assertions, and legal conclusions do nothing to challenge the clear evidence presented by Plaintiffs. As such the Defendant failed to create a genuine issue of material fact with respect to issues raised in Plaintiffs' MSJ.

**WHEREFORE**, the Plaintiffs respectfully request that the Court grant the Partial Summary Judgment in favor of the Plaintiffs on their Fraud and Conversion count with respect to liability only, and award and any other appropriate relief as the Court deems just and proper.

Date: January 21, 2025                                          Alexander Kaplin, Bendtrand

Global Services S.A., Runner
Runner LLC
By: /s/ Gene Hook
Counsel for the Plaintiffs

Gene Hook
Law Office of Gene Hook
401 S LaSalle St., Suite 1600 Q
Chicago, IL 60605
Phone: 773-606-1856

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing Reply in Support of Motion for Partial Summary Judgment was served upon all counsel of record this 21st day of January, 2025 via Case Management/Electronic Case Filing ("CM/ECF") System.

/s/ Gene Hook